# UNITED STATES DISTRICT COURT

# DISTRICT OF MINNESOTA

| | |
|---|---|
| YAN MING WANG<br>on behalf of himself and other similarly situated employees,<br><br>                                    Plaintiff,<br><br>v.<br><br>JESSY CORPORATION<br>     d/b/a China Buffet,<br>JOHN DOE CORPORATION<br>     d/b/a China Buffet,<br>CHANG QIN LIN<br>     a/k/a Jim Lin,<br>NGAI FAT MEI, and<br>JOYCE ZHENG<br><br>                                    Defendants. | Civil No. 17-5069 (JRT/HB)<br><br>**ORDER DENYING PLAINTIFF'S MOTION FOR CONDITIONAL CLASS CERTIFICATION** |

Jason D. Friedman and Rachhana T. Srey, **NICHOLS KASTER, PLLP**, 80 South 8th Street, Suite 4600, Minneapolis, MN  55402-2242; John Troy, **TROY LAW, PLLC**, 41-25 Kissena Boulevard., Suite 119, Flushing, NY  11355, for plaintiff.

Boris Parker and Jordan W. Anderson, **PARKER & WENNER, P.A.,** 2100 Fifth Street Towers, 100 South Fifth Street, Suite 2100, Minneapolis, MN  55402, for defendants.

Plaintiff Yan Ming Wang brings this action against his former employer, Defendant Jessy Corp., d/b/a China Buffet, alleging violations of the Fair Labor Standards Act ("FLSA") and various Minnesota wage and overtime laws.  He has moved to certify the case as a collective action pursuant to 29 U.S.C. § 216(b) (2018).  Because Wang has not adequately shown that similarly situated employees exist, the Court will deny his Motion without prejudice.

## BACKGROUND

China Buffet is a Chinese food restaurant located in Mankato, Minnesota. Wang worked for China Buffet as a cook for over a year between 2014 and 2015. (Aff. of Yan Ming Wang ("Wang Aff.") ¶ 5, June 19, 2018, Docket No. 30.) While he worked there, Wang lived in a dormitory owned by China Buffet. (*Id.* ¶ 9.) Six days a week, the China Buffet managers would shuttle him from the dormitory to the restaurant, where he would work from 9:45 a.m. to 10 or 11 p.m. (Wang Aff. ¶¶ 6, 9.) When he was done working, the managers would shuttle him home. (*Id.* ¶ 9.) In total, Wang estimates that he worked over 75 hours a week. (*Id.* ¶ 6.)

Despite his long hours, Wang says that he was never provided overtime pay, instead, he was paid a flat monthly rate, in cash, at the end of the month.[1] (*Id.* ¶¶ 18, 19.) Wang also claims that he was not the only one who was subject to this unique working arrangement. He says that, in fact, all employees lived in the dormitory together. (*Id.* ¶ 9.) Additionally, while he is unsure of every employees' hours, Wang can identify six other employees who worked the same hours as he did. (*Id.* ¶ 10.) Further, he says that all employees were paid monthly, in cash. (*Id.* ¶ 19.) However, he only has personal knowledge that one, his roommate Yongqun Zhu, was also denied overtime. (*Id.* ¶ 19; Pl.'s Mem. in Supp. at 4, June 15, 2018, Docket No. 26.)

Wang filed his FLSA claim on November 9, 2017. (Compl., Nov. 9, 2017, Docket No. 1.) On April 16, 2018, as part of initial disclosures, China Buffet turned over the names, current addresses, and phone numbers of 17 current and former non-managerial China Buffet employees.[2] (Aff. of Chang Qin Lin ("Lin Aff.") ¶ 14, Ex. B at 1-4, June 29, 2018, Docket No. 34-2.) Using

---

[1] For the first few months, he was paid $2800; by the end, he was paid $3200. (*Id.* ¶¶ 12-16.)
[2] Additionally, China Buffet provided "four years of W-2s for all employees, payroll journals by employee, corporate state and federal tax returns, and bank statements." (Def.'s Mem. in Opp. at 4, June 29, 2018, Docket No. 33.)

this information, Wang sent letters to several former employees on June 15, 2018, notifying them of his lawsuit, asking them for information, and telling them that they may be entitled to back pay. (*See* Lin Aff. ¶ 17, Ex C., Docket No. 34-3.)

So far, the letters have been unsuccessful, as none of the former employees have responded. Wang attributes this lack of success to three factors. First, he sent only six letters and one was returned as undeliverable. (Declaration of Rachhana T. Srey ¶ 3, July 13, 2018, Docket No. 36.) Second, the letters were sent only in English, instead of Mandarin, and Wang believes these former employees are non-English speakers. (Pl.'s Mem. in Reply at 6, July 13, 2018, Docket No. 35.) Finally, Wang points out that the letters did not specify a date by which to respond, nor did they contain a plaintiff consent form with which the employees could have joined the lawsuit. (*See* Lin Aff., Ex C.)

Despite the unsuccessful letters, Wang has found one former employee interested in his lawsuit, Mei Rong Sun. On April 30, 2018, she "opted in" to the lawsuit.[3] (Pl.s' Notice of Consent, April 30, 2018, Docket No. 20.) In addition to opting-in, she provided an affidavit detailing her time at China Buffet. Sun worked as a cold dish worker and waitress for a year between 2014 and 2015. (Decl. of John Troy ¶ 3, Ex. 2 (Aff. of Mei Rong Sun ("Sun Aff.")) ¶¶ 4-5, June 15, 2018, Docket No. 27-2.) Her experience while working there was similar in all respects to Wang's: she lived in and was transported to work from the dormitory; she worked over 75 hours per week; she was paid a flat monthly rate, in cash, that denied her overtime; and she claims that her roommate

---

[3] The parties disagree about whether Sun is a legitimate "opt-in" plaintiff or is simply strategically being held out as such. China Buffet alleges that Sun is Wang's romantic partner, and that Wang asked China Buffet to hire Sun while he was still employed there. (Lin Aff. ¶ 5.) China Buffet therefore argues that Sun must have been aware of the lawsuit when Wang filed it, and was intentionally left out in order to later claim her as an opt-in plaintiff, thus bolstering his case for certification. In response, Wang's attorneys deny having been in contact with Sun before April 16, 2018, months after the suit was filed. (Pl.'s Mem. in Reply at 10.) However, Wang's attorneys do not say how Sun came to learn of the lawsuit.

was also denied overtime.  (Sun Aff. ¶¶ 9, 11-13, 16-20.)  Additionally, she, like Wang, can identify several other individuals who worked the same hours.  (*Id.* ¶ 14.)  However, the list of people that she identifies is largely the same was Wang's, and she is unable to remember the first or last name of the only individual on her list that was not included in Wang's list. (*Id.*).

Because Wang believes that he, Sun, and their respective roommates are not the only former China Buffet employees who were denied overtime, he brings the present Motion to Certify a Conditional Class in accordance with 29 U.S.C. § 216(b).  According to Magistrate Bowbeer's discovery order, fact discovery will conclude 120 days after the Court's ruling on Wang's motion. (Pretrial Scheduling Order at 3, March 15, 2018, Docket No. 19.)

## DISCUSSION

**I.  MOTION TO CERTIFY CONDITIONAL CLASS**

The FLSA permits an employee alleging wage and hour violations to assert claims on behalf of himself "and other employees similarly situated" by starting a collective action. 29 U.S.C. § 216(b).  The FLSA collective action process allows individuals to "opt-in" to a lawsuit started by someone else, however the outcome is not binding on those who do not opt-in.  The purpose of the FLSA collective action is to provide plaintiffs with "the advantage of lower individual costs to vindicate rights [through] the pooling of resources."  *Hoffmann-La Roche Inc. v. Sperling*, 493 U.S. 165, 170 (1989).

Providing notice to potential plaintiffs is a vital part of the FLSA collective action process. Because of this, courts are encouraged to "monitor[] preparation and distribution of the notice" to "ensure that it is timely, accurate, and informative."  *Id.* at 172.  Before providing authorization for any notice, courts in this District have looked at the facts of a case and determine whether to conditionally certify it for collective action treatment under the FLSA.  In this case, Wang seeks

conditional certification of a collective action and authorization of notice to "all current and former employees of Jessy Corporation d/b/a China Buffet . . . who performed work as non-exempt, non-managerial restaurant workers from November 9, 2014, to the present." (Proposed Order, June 15, 2018, Docket No. 29.)

### A. Standard for Certification of a Collective Action

To determine whether a case should be certified under the FLSA, courts in this district have typically employed a two-step process. First, the Court determines whether the class should be conditionally certified for the purposes of notification and discovery. *Burch v. Qwest Commc'ns Int'l, Inc.*, 500 F. Supp. 2d 1181, 1186 (D. Minn. 2007) (quoting *Dege v. Hutchinson Tech., Inc.*, Civ. No. 06–3754, 2007 WL 586787, at *1 (D. Minn. Feb. 22, 2007)). At this stage, a plaintiff need establish only that his or her proposed class is similarly situated, in other words that there is a "'colorable basis for [his or her] claim that the putative class members were the victims of a single decision, policy, or plan.'" *Id.* (quoting *Dege*, 2007 WL 586787, at *1). "The sole consequence of conditional certification is the sending of court-approved written notice to employees." *Genesis Healthcare Corp. v. Symczyk*, 569 U.S. 66, 75 (2013).

The first stage is often referred to as the "notice stage" because the inquiry focuses on "whether notice of the action should be given to potential class members." *Loomis v. CUSA LLC*, 257 F.R.D. 674, 676 (D. Minn. 2009) (quoting *Hipp v. Liberty Nat'l Life Ins. Co.*, 252 F.3d 1208, 1218 (11th Cir. 2001)). At this notice stage, "[t]he court does not make any credibility determinations or findings of fact with respect to contrary evidence presented by the parties." *Dege*, 2007 WL 586787, at *2. Rather, "[i]n determining whether plaintiffs have met their initial burden, courts rely on the complaint and any affidavits that have been submitted." *Sjoblom v. Charter Commc'ns, LLC*, 571 F.Supp.2d 961, 967-68 (W.D. Wis. 2008). "Because the Court has

minimal evidence, this [notice] determination is made using a fairly lenient standard," and plaintiff's burden at this stage is "not onerous." *Loomis*, 257 F.R.D. at 676 (quoting *Hipp*, 252 F.3d at 1218).

After discovery, the court conducts the second-stage of inquiry, which involves considering "'the extent and consequences of disparate factual and employment settings of the individual plaintiffs, the various defenses available to the defendant that appear to be individual to each plaintiff, and other fairness and procedural considerations.'" *Burch*, 500 F. Supp. 2d at 1186 (quoting *Dege*, 2007 WL 586787, at *2). "At this later stage, the court uses a stricter standard for determining whether the plaintiffs are similarly situated and reconsiders whether the trial should proceed collectively or if it should be severed," usually in a motion for decertification. *Kalish v. High Tech Inst., Inc.*, Civ. No 04-1440, 2005 WL 1073645, at *1 (D. Minn. Apr. 22, 2005).

There are times when a court may apply the more stringent standard even though discovery is not complete. However, this is limited to situations where "'extensive discovery' or a significant number of potential plaintiffs have already filed consent forms to join the lawsuit." *In re RBC Dain Rauscher Overtime Litigation*, 703 F. Supp, 2d 910, 964 (D. Minn. 2010). Although China Buffet argues that the more stringent standard should apply here, the Court finds that the first stage is still appropriate at this time. It is true that some discovery has been completed, namely that China Buffet has answered interrogatories and provided Wang with the contact information of 17 former employees. However, this does not constitute the "extensive discovery" necessary to warrant second stage analysis. *See Kalish*, 2005 WL 1073645 at *2 (refusing to apply second stage analysis even though the discovery deadline was 2 weeks away and the case had been pending for almost a year). Similarly, there is not a significant number of opt-in plaintiffs. As such, the Court applies the "lenient" burden associated with the notice stage.

### B.  Wang Has Not Satisfied the Standard for Conditional Certification

As stated above, Wang must provide a "colorable basis" that he and his putative class are "similarly situated." In essence, he must provide some minimal evidence that he and the class he seeks to represent were the "victims of an unlawful practice." *Meseck v. TAK Commc'ns, Inc.*, Civ. No. 10-965, 2011 WL 1190579, at *3 (D. Minn. Mar. 28, 2011) (quoting *Sjoblom,* 571 F. Supp. 2d at 967). There are two distinct challenges for a plaintiff in making this showing. First, he or she must explain how the putative class is similar in the abstract, such that the collective action mechanism is judicially efficient. Second, he or she must provide enough evidence to show that the class of injured employees actually exists. *See Trezvant v. Fid. Emplr. Servs. Corp.*, 434 F. Supp. 2d 40, 43-44 (D. Mass. 2006) ("As a matter of sound case management, a court should make a preliminary inquiry as to whether a manageable class exists and require plaintiffs to make a preliminary factual showing that there actually exists a similarly situated group of potential plaintiffs.") (internal quotations omitted).

The issue in this case is not whether Wang's putative class is similarly situated in the abstract. Wang alleges that China Buffet denied its non-managerial employees overtime pay in violation of the FLSA. In *Knaak v. Armour-Eckrich Meats, LLC*, a class of "all employees . . . who [were] paid on an hourly basis and who [were] required to wear sanitary clothing or protective gear" was similarly situated. 991 F. Supp. 2d 1052, 1059 (D. Minn. 2014). Likewise, in *Overtime Litigation*, a group that "ha[d] similar duties and responsibilities and . . . a similar system of compensation" was similarly situated. 703 F. Supp. 2d at 964. The purported class here is no different. If it is true that China Buffet employees were denied overtime, they would undoubtedly be similarly situated because they 1) worked as non-managerial employees for China Buffet; 2) worked more than 40 hours a week; and 3) were denied overtime. Further, it is inconceivable to

think that this would not have stemmed from a "single decision, policy, or plan" made by China Buffet especially because China Buffet operated a separate dormitory and shuttle service for their employees.

Instead, the problem here is that Wang, even after some discovery, has submitted very little proof that other employees were denied overtime in the same manner as he and Sun were. Wang relies on two pieces of evidence to show that other employees exist. First is the fact of the opt-in plaintiff, Sun. Her willingness to join the class, and her claiming to have suffered the same FLSA wrongs that Wang did, provides some evidence that there are other similarly affected employees. The two affidavits, from Wang and Sun, are the second piece of evidence. In the affidavits, which are remarkably similar, Wang and Sun both claim to know several other individuals who (1) worked for China Buffet in some fashion, (2) were driven to work and lived together, (3) worked the same long hours that they did, and (4) were all paid monthly in cash. However, except for their respective roommates, neither Wang nor Sun is able to speak about the overtime pay status of other China Buffet employees.

The Court finds that, even applying the lenient first stage, Wang has not met his burden to show that similarly situated employees exist. Two affidavits hardly suffice to meet his non-onerous burden to show "a colorable basis" that he and the employees he seeks to represent are similarly situated. "A colorable basis means that plaintiffs must come forward with something more than the mere averments in their complaint in support of their claim." *Harris v. Chipotle Mexican Grill, Inc.*, 49 F. Supp. 3d 564, 578 (D. Minn. 2014) (quoting *Lyons v. Ameriprise Financial, Inc.*, Civ. No. 10-503, 2010 WL 3733565 at *3, (D. Minn. Sept. 20, 2010)). Despite having the names, contact information, and relevant tax information for 17 former China Buffet employees, Wang is still only able to make the general allegation that China Buffet denied other

employees overtime pay. Without some additional factual assurances that other employees at China Buffet were denied overtime, the Court is unwilling to hold, at this time, that his case is appropriate for collective action.

The Court concludes that Wang has failed to meet his lenient burden to show that similarly situated employees exist. However, because discovery is ongoing, it is possible that Wang will be able to develop a stronger factual basis for his claim that China Buffet denied other employees overtime pay, and/or find more individuals willing to opt-in to his lawsuit. As such, the Court will deny the motion without prejudice and would hear another motion for certification should the circumstances change.

**ORDER**

Based on the foregoing, and all the files, records, and proceedings herein, **IT IS HEREBY ORDERED** that Plaintiff Yan Ming Wang Wang's Motion for Conditional Collective Action Certification [Docket No. 25] is **DENIED WITHOUT PREJUDICE.**

DATED: October 30, 2018  
at Minneapolis, Minnesota.

                          s/John R. Tunheim  
                          JOHN R. TUNHEIM  
                          Chief Judge  
                          United States District Court