## UNITED STATES DISTRICT COURT
## DISTRICT OF MINNESOTA

| | |
|---|---|
| YAN MING WANG, *on behalf of himself, the proposed FLSA Collective and Putative Rule 23 Class* | Civil No. 17-5069 (JRT/HB) |
| Plaintiff, | **MEMORANDUM OPINION AND ORDER GRANTING IN PART AND DENYING IN PART DEFENDANT'S MOTION FOR SUMMARY JUDGMENT** |
| v. | |
| JESSY CORP. *d/b/a China Buffet*, CHANG QUIN LIN, NGAI FAT MEI, AND JOYCE ZHENG, | |
| Defendants. | |

Aaron B. Schweitzer & John Troy, **TROY LAW, PLLC,** 41-25 Kissena Boulevard, Suite 103, Flushing, NY 11355; and Rachhana T. Srey, **NICHOLS KASTER, PLLP,** 80 S. 8th Street, Suite 4600, Minneapolis, Minnesota 55402-2242, for plaintiff;

Boris Parker & Jordan W. Anderson, **PARKER & WENNER, P.A.,** 100 South Fifth Street, 2100 Fifth Street Towers, Minneapolis, Minnesota 55402, for defendants.

Plaintiff Yan Ming Wang brings this action against his former employer, Defendant

Jessy Corp., d/b/a China Buffet, and its owner Defendant Chang Qin Lin, and operators

Joyce Zheng, and Ngai Fat Mei (collectively "Defendants") alleging violations of the Fair

Labor Standards Act ("FLSA") 29 U.S.C. § 207 and the Minnesota Fair Labor Standards Act

("MFLSA") Minn. Stat. §177.25.  Wang alleges Defendants failed to pay him overtime as

required by law despite him working an estimated 75 hours per week.  On December 3, 2019, Defendants filed this Motion for Summary Judgment pursuant to Fed. R. Civ. P. 56(a).  (Mot. Summ. J., Dec. 3, 2019, Docket No. 82.)  The parties dispute (1) whether opt-in Plaintiff Mei Rong Sun's FLSA claims remain in the wake of the Court denying Wang's motion for conditional certification of a collective action under § 216(b);  (2) whether the statute of limitation bars the claims; (3) whether an employer-employee relationship between Wang and Defendants existed; and (4) whether Wang has met his evidentiary burden regarding his claimed overtime hours.

Because the Court finds that (1) Plaintiff Mei Rong Sun properly opted in and has not been dismissed; (2) a dispute of material fact remains as to whether China Buffet acted willfully; (3) an employer-employee relationship existed between Wang and China Buffett, but the individual Defendants were not Wang's joint employers; and (4) Wang provided evidence to create a reasonable inference that both FLSA and MFLSA were violated, the Court will grant in part and deny in part Defendants Motion for Summary Judgment.

**BACKGROUND**

**I.  FACTUAL BACKGROUND**

Defendant Jessy Corp. d/b/a China Buffet was formed in 2000 by Defendant Chang Qin Lin.  (Decl. of John Troy ("Troy Decl.") ¶ 3, Ex. D ("Lin Depo.") at 8:6–17, Feb. 15, 2019, Docket No. 49-4.)  Defendant Lin is the sole shareholder of Jessy Corp., and thus the sole

owner of China Buffet, a Chinese food restaurant located in Mankato, Minnesota. (*Id.* at 9:15–10:15.)

Wang stated he worked for China Buffet as a fry cook for roughly 13 months;[1] from March 27, 2014 through May 10, 2014 and again from October 2, 2014 through September 20, 2015. (Aff. of Yan Ming Wang ("Wang Aff.") ¶ 3, 6, June 19, 2018, Docket No. 30.)[2] Wang worked six days a week and was shuttled to and from dormitory-provided housing to the restaurant, where he would work from 9:45 a.m. to 10 or 11 p.m. each day (*Id.* ¶¶ 6, 9.) When he was done working, the managers would shuttle him home. (*Id.* ¶ 9.) In total, Wang estimates that he worked roughly 75 hours a week. (*Id.* ¶ 6.) Despite his long hours, Wang was never provided overtime pay. Instead, he was paid a flat rate in cash at the end of each month.[3] (*Id.* ¶¶ 18, 19.) Wang also brought no tools or prior skills to his work at China Buffet and used only tools and training provided by Defendants.

In deposition testimony, Lin states that he did not require his workers to punch in and out of work or otherwise keep records related to the number of hours worked each week. Even so, Lin testified that (1) all China Buffet workers, including Wang, worked six, eight-hour days (or 48 hours); (2) that Lin provided housing and transportation to and

---

[1] The precise length of time Wang worked for China Buffet is in dispute. Lin testified that Wang only worked for him for roughly seven months. (Lin Depo. at 27:17–19.)

[2] The same Wang Affidavit was filed several times. (*See, e.g.* Docket Nos. 27-2 and 49-2.) For ease of reference, the Court refers to the copy filed as Docket No. 30.

[3] For the first few months, Wang was paid $2800; by the end his employment, Wang was paid $3200. (*Id.* ¶¶ 12–16.)

from work for all his employees; (3) that Lin, as the "boss," set the work schedule and the

amount each worker was paid each month; (4) that Lin consulted with an accountant

about compliance with federal and state law and was aware of the FLSA and MFLSA

overtime requirements; and (4) that China Buffet had no overtime policy.  (Lin Depo.

48:8–49:15–20; 52:1–53:25.)   Lin also testified that his duties as a "boss" included

supervising his workers to make sure they are "working well."  (*Id.* 47:3–17.)

## II.  PROCEDURAL BACKGROUND

Wang filed this action on November 9, 2017 alleging Defendants violated the FLSA

and MFLSA by failing to provide overtime.  (Compl., Nov. 9, 2017, Docket No. 1.)

On April 30, 2018, Mei Rong Sun, another former China Buffet employee, filed a

Notice of Consent to "opt-in" as an additional plaintiff under 29 U.S.C. § 216.  *Wang v.*

*Jessy Corp. et al.* ("*Wang I*"), No. CV 17-5069 (JRT/HB), 2018 WL 5617567, at *2 (D. Minn.

Oct. 30, 2018).  Sun provided an affidavit stating her experience working at China Buffet

was, in all relevant respects, similar to Wang's.  *Id.* (discussing Sun's affidavit detailing her

work experience).

On October 30, 2018, the Court denied Wang's first motion to conditionally certify

a collective action under 29 U.S.C. § 216(b), finding that Wang had failed to adequately

show a group of people similarly situated to Wang and Sun existed for purposes of the

Court sending notice.  *Id.* at *4.  The Court stated, however, that discovery was ongoing

and that it would hear another motion for conditional certification should Wang develop sufficient evidence. *Id.*

On August 6, 2019, the Court denied Wang's second motion to conditionally certify a collective FLSA action. *Wang v. Jessy Corp. et al.* ("*Wang II*"), No. 17-5069 (JRT/HB), 2019 WL 3574553, at *6 (D. Minn. Aug. 6, 2019). The Court noted that although Lin's deposition testimony showed that Wang had met the requirement to show a group of potential plaintiffs existed that were similarly situated to Wang and Sun, Wang had failed to show the requisite interest from opt-in plaintiffs for the Court to conditionally certify a collective action and trigger official notice to the potential plaintiffs. *Id.* at *4–*5.

On December 3, 2019, Defendants filed this Motion for Summary Judgment pursuant to Fed. R. Civ. P. 56(a). (Mot. Summ. J., Dec. 3, 2019, Docket No. 82.) The parties dispute (1) whether opt-in Plaintiff Mei Rong Sun's FLSA claims remain in the wake of the Court denying Wang's motion for conditional certification of a collective action under § 216(b); (2) whether the statute of limitation bars the claims; (3) whether an employer-employee relationship between Wang and Defendants existed subjecting Wang to FLSA protection; and (4) whether Wang has met his evidentiary burden regarding his claimed overtime hours. Each dispute is considered in turn below.

## DISCUSSION

## I.     STANDARD OF REVIEW

Summary judgment is appropriate when there are no genuine issues of material fact and the moving party can demonstrate that it is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(a). A fact is material if it might affect the outcome of the suit, and a dispute is genuine if the evidence is such that it could lead a reasonable jury to return a verdict for the nonmoving party. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). A court considering a motion for summary judgment must view the facts in the light most favorable to the non-moving party and give that party the benefit of all reasonable inferences to be drawn from those facts. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986).

Summary judgment is appropriate if the nonmoving party "fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986). The nonmoving party may not rest on mere allegations or denials but must show through the presentation of admissible evidence that specific facts exist creating a genuine issue for trial. *Anderson*, 477 U.S. at 256 (citing Fed. R. Civ. P. 56(e)).

## II.    OPT-IN PLAINTIFF MEI RONG SUN'S CLAIMS

Section 216(b) of Title 29 creates a collective action for employees who allege that their employer has violated the FLSA by failing to comply with its overtime pay requirements but requires each plaintiff "opt-in" to the action by filing written consent with the court. The Court previously noted that Sun properly "opted in" on April 30, 2018

and was similarly situated to Wang.  See *Wang I*, 2018 WL 5617567 *2 (discussing Sun's claims and noting they are in all relevant respects similar to Wang's).

Defendants now argue that Sun's claims no longer remain because the Court denied Wang's motion for conditional certification of the collective FLSA action.  But, as the Court has previously recognized, "[t]he sole consequence of conditional certification is the sending of court-approved written notice to employees."  *Wang I*, 2018 WL 561756, at *2 (quoting *Genesis Healthcare Corp. v. Symczyk*, 569 U.S. 66, 75 (2013)).  Thus, the Court's decision to deny Wang's motion for conditional certification of a collective action has no effect on Sun's status as an opt-in plaintiff and she remains a proper opt-in plaintiff.  *See id.*[4]

Accordingly, to the extent Defendants argue Sun is no longer a proper opt-in plaintiff, the Court will deny Defendants' Motion.

## III.   STATUTE OF LIMITATIONS

A plaintiff must commence a cause of action under FLSA or MFLSA within two years of the alleged violation "except that a cause of action arising out of a willful violation may be commenced within three years after the cause of action accrued . . . ." 29 U.S.C. § 255(a); *accord* Minn. Stat. § 541.07(5) (noting the statute of limitations under MFLSA

---

[4] *See also Mickles v. Country Club Inc.*, 887 F.3d 1270, 1278 (11th Cir. 2018) (noting that "conditional certification does not affect party status" and an opt-in plaintiff "remain[s] [a] party plaintiff[] until the district court determines they are not similarly situated and dismisses them").

may be three years if "the nonpayment is willful and not the result of mistake or inadvertence"). Because Wang's cause of action was brought over two, but within three, years of Wang's employment at China Buffet ending, determination of the statute of limitations issue turns on whether Lin acted willfully.

FLSA and MFLSA define "willfully" differently. Under FLSA, "[a] willful violation is one made knowingly or with reckless disregard for whether the employer's conduct was prohibited by the statute." *Brown v. Fred's, Inc.*, 494 F.3d 736, 743 (8th Cir. 2007) (citing *McLaughlin v. Richland Shoe Co* ., 486 U.S. 128, 133 (1988)). Under MFLSA, a willful violation is an "intentional and deliberate" action. *Levin v. C.O.M.B. Co.*, 441 N.W. 2d 801, 805 (Minn. 1989). Plaintiff bears the burden of showing that the Defendant acted "willfully." *Theisen v. City of Maple Grove*, 41 F.Supp.2d 932, 942 (D. Minn. Jan. 15, 1999) (citing *McLaughlin*, 486 U.S. at 133 (1988)). The question of willfulness can be—and often is—a question of fact for the jury to decide. *Levin*, 441 N.W.2d at 805 (discussing the relevant statute of limitations that applies to MFLSA and noting that the question of willfulness "seems almost certainly to demand submission" to the fact-finder); *accord Brown v. Fred's, Inc.*, 494 F.3d 736, 743 (8th Cir. 2007) (upholding the district court's decision to submit the question of willfulness to the jury).

When viewing the evidence in a light most favorable to Wang, a genuine dispute of material fact remains as to whether Lin acted willfully. Lin's deposition testimony establishes that Lin knew of the 40-hour FLSA and 48-hour MFLSA requirements, that he

transported his employees to and from work, set their work schedule, monitored their daily work, that China Buffet did not have an overtime policy because Lin did not think he could afford to pay overtime, and that China Buffet employees worked at least 48 hours per week.

And although Defendants appear to argue that Wang waived his FLSA rights because Wang asked to be paid a flat monthly rate, FLSA rights are statutory and cannot be waived except in limited circumstances that do not apply here. *Copeland v. ABB, Inc.*, 521 F.3d 1010, 1014 (8th Cir. 2008).

Because a material dispute of fact remains as to whether Lin acted willfully, the Court will deny Defendants' Motion for Summary Judgment to the extent it relies on the statute of limitations to bar recovery.

## IV. EMPLOYEE OR INDEPENDENT CONTRACTOR

"The FLSA mandates that to maintain a claim for overtime compensation an employer-employee relationship must exist." *Schmidt v. DIRECTV, LLC*, No. CV 14-3000 (JRT/TNL), 2017 WL 3575849, at *4 (D. Minn. Aug. 17, 2017). "The test of employment under the FLSA is one of economic reality" and is ultimately a question of law for the Court to decide despite involving questions of fact. *Karlson v. Action Process Serv. & Private Investigations*, LLC, 860 F.3d 1089, 1094 (8th Cir. 2017) (quoting *Tony & Susan Alamo Found. v. Sec'y of Labor*, 471 U.S. 290, 301 (1985)) (cleaned up). Many courts have applied

a six-factor balancing test to determine the economic realities of the relationship.[5]  *See, e.g.*, *Acosta v. Off Duty Police Servs., Inc.*, 915 F.3d 1050, 1055 (6th Cir. 2019) (applying six-factor test); *Le v. Regency Corp.*, 957 F. Supp. 2d 1079, 1089 (D. Minn. 2013) (same).

Under the six-factor test to determine if the employer-employee relationship exists, the Court should examine

> (1) whether the service rendered by the worker is an integral part of the alleged employer's business;
> (2) the degree of skill required for the rendering of the services;
> (3) the worker's investment in equipment or materials for the task;
> (4) the degree of the alleged employer's right to control the manner in which the work is performed;
> (5) the worker's opportunity for profit or loss, depending upon his skill; and
> (6) the permanency of the relationship between the parties.

*See Acosta*, 915 F.3d at 1055 (cleaned up); *accord Karlson*, 860 F.3d at 1093–94 (discussing and affirming application of the same "widely-used economic realities factors").

**A.  Wang and Defendant China Buffet**

All six factors weigh in favor of finding an employment relationship existed between Wang and China Buffet.

---

[5] Although the Eighth Circuit has declined to adopt a specific test that courts should use, it has affirmed district court determinations based upon this six-factor test.  *See, e.g., Karlson*, 860 F.3d at 1093.

### 1. Wang's Services Integral to China Buffet

First, Wang's services as the only fry cook were undoubtedly integral to China Buffet's business, making the first factor cut heavily in favor of finding that Wang was an employee. *Acosta*, 915 F.3d at 1055 ("The more integral the worker's services are to the business, then the more likely it is that the parties have an employer-employee relationship.")

### 2. Degree of Skill Required to Perform Wang's Job

Second, the skills required to become a fry cook are neither specialized nor unique, and Wang was trained by China Buffet on how to complete his work. Thus, this factor weighs in favor of finding Wang was an employee as well. *Id.* (noting that this factor weighs in favor of finding no employment relationship exists when the worker had specialized and unique skills or training).

### 3. Wang's Own Investment in China Buffet

Third, Wang did not invest any resources into China Buffet and was provided all the tools he needed to complete his job by China Buffet. This factor therefore also weighs heavily in favor of finding Wang to be an employee rather than an independent contractor. *Cf. Karlson*, 860 F.3d. at 1094 (affirming the jury verdict adopted by the Court finding no employment relationship, in part, because the plaintiff used his own tools (e.g. "car, phone, and computer") to complete his task); *Acosta*, 915 F.3d at 1056 (noting this

factor may favor independent contractor status if the worker invested in some special tool that is required to complete the task).

### 4.  Degree of Control China Buffet Exerted Over Wang's Work

Fourth, Defendants concede that China Buffet—acting through Defendants Zheng and Lin—clearly exerted an inordinate amount of control over the work done by Wang. Although Wang did not punch in and out of work each day, Lin provided transportation to and from work each day, essentially dictating and tracking when Wang worked and for how long.  *Cf. Karlson*, 860 F.3d at 1094–95 (affirming the jury verdict adopted by the Court finding no employment relationship, in part, when the plaintiff's schedule was not dictated by the alleged employer).  Moreover, Lin set Wang's schedule and, along with his wife, supervised Wang's work.  This factor also weighs heavily in favor of finding an employment relationship.

### 5.  Wang's Opportunity for Profit and Loss

Fifth, Wang's opportunity for profit or loss did not depend on his managerial skills as a fry cook and Wang exerted no independent discretion or judgment related to his work.  Wang was paid a flat, monthly fee in cash no matter how much food he fried.  Thus, this factor also cuts heavily in favor of finding an employment relationship existed.  *Cf. id.* (affirming the jury verdict adopted by the Court finding no employment relationship, in part, because the plaintiff was paid a fee based on how many jobs he could complete);

*Acosta*, 915 F.3d at 1059 (noting this factor may favor independent contractor status if a worker uses his or her managerial skills to complete more jobs to get more pay).

### 6.  Permanency of Wang's Position

Sixth, there is no evidence that Wang was employed for a finite period; rather it appears that Wang was employed for an indefinite period and could likely still be working at China Buffett today if he had not quit.   Thus, this factor appears to weigh in favor of finding an employment relationship existed.  *Karlson*, 860 F.3d at 1094–95 (affirming the jury verdict adopted by the Court finding no employment relationship, in part, because plaintiff chose which assignments he accepted and was only contracted for the time necessary to complete each assignment).

Even so, Lin's deposition testimony shows that many of his China Buffet workers came and went as they pleased and sometimes, when things were slow at China Buffet, would work for one of his competitor restaurants in Mankato.  *See  Acosta*, 915 F.3d at 1057 ("Independent contractors often have fixed employment periods and transfer from place to place as particular work is offered to them, whereas employees usually work for only one employer and such relationship is continuous and indefinite in duration.")

Lin, however, did not testify that Wang left China Buffet to work for a competitor. And although Wang worked for China Buffet for one month, left for a time, then returned, it does not appear that either employment period was time-limited.  Thus, while this

factor is the closest of all six factors, it too weighs in favor of finding an employment relationship existed between Wang and China Buffet.

### 7. Conclusion on Wang and China Buffet Employment Relationship

In sum, each of the six factors weighs in favor of finding Wang was an employee of China Buffet and not an independent contractor.

Accordingly, the Court finds as a matter of law that Wang was an employee of China Buffet and will deny Defendants' Motion for Summary Judgment as it relates to China Buffet.

### B. Wang and Individual Defendants

Wang appears to argue that Defendants Lin, Zheng, and Mei are personally liable as Wang's joint employers.

This argument fails for all three Defendants.   Wang does not allege any independent actions that Lin or Zheng took outside their responsibilities at China Buffet that would lead to the conclusion that Lin or Zheng were "joint employers" with China Buffet.  Wang also cites no authority for the proposition that a manager of the alleged employer can also be held liable as a joint employer for executing tasks related to the alleged employer company.  Indeed, holding managers or owners personally liable as joint employers would make little sense as corporations can only act through the people

running the company. Wang also does not allege Defendant Mei was a joint employer at all.

Accordingly, the Court finds that individual Defendants Lin, Zheng, and Mei were not Wang's joint employers along with China Buffet and cannot be held personally liable for Wang's claims. The court will therefore grant Defendants' Motion for Summary Judgment as it relates to Lin, Zheng, and Mei in their individual capacities.

### C. Conclusion on Motion as it Relates to All Defendants

The Court will grant in part and deny in part Defendants' Motion for Summary Judgment on the issue of whether an employer-employee relationship existed. The Court will deny the motion as it relates to Defendant China Buffet and find that an employer-employee relationship existed and will grant the motion as it relates to Defendants Lin, Zheng, and Mei because the defendants were not Wang's joint employers.

## V.  HOURS WORKED

Under the FLSA, "[a]n employee who sues for unpaid overtime 'has the burden of proving that he performed work for which he was not properly compensated.'" *Holaway v. Stratasys, Inc.*, 771 F.3d 1057, 1059 (8th Cir. 2014) (quoting *Anderson v. Mt. Clemens Pottery Co.*, 328 U.S. 680, 686–87 (1946), superseded by statute on other grounds). "For employees subject to the overtime limits of the FLSA, employers are required to keep records of wages and hours." *Id.* However, "[i]f an employer has failed to keep records,

employees are not denied recovery under the FLSA simply because they cannot prove the precise extent of their uncompensated work." *Id.*   Instead, the Court should award employees compensation "based on the most accurate basis possible." *Id.*   Under this relaxed standard of proof, the burden shifts to the employer if an employee offers "sufficient evidence to show the amount and extent of [uncompensated] work as a matter of just and reasonable inference." *Id.* (quoting *Carmody v. Kansas City Bd. of Police Comm'rs*, 713 F.3d 401, 406 (8th Cir. 2013)).

Defendants failed to keep records of Wang's employment.   Thus, so long as Wang offers enough evidence to allow a reasonable inference that he worked excess of 40 hours under FLSA or 48 hours under MFLSA, the burden falls to Defendants to prove Wang was properly compensated.

Wang has met his evidentiary burden.   Lin's deposition testimony acknowledges that China Buffet employees, including Wang, worked a minimum of 48 hours per week. Wang's testimony indicates the restaurant was physically opened for business 48 hours per week.   Common sense indicates that restaurant employees—especially those at a buffet that must prepare food in advance of opening—worked at least some additional time preparing to open and cleaning up after the restaurant closed for business.   Indeed, Wang claims he arrived each day via Lin's transport at 9:45 AM to prepare for lunch service and stayed at least one hour past closing each day cleaning up.   Based on the evidence presented, a reasonable jury could conclude Wang worked in excess of 48 hours

per week and must conclude Wang worked in excess of 40 hours per week. Wang has thus satisfied his burden at the summary judgment stage.

Accordingly, the Court will deny Defendants' Motion for Summary Judgment as a genuine dispute of fact remains as to exact number of hours Wang worked per week.

## ORDER

Based on the foregoing, and all the files, records, and proceedings herein, **IT IS HEREBY ORDERED** that:

1. Defendants' Motion for Summary Judgment [Docket No. 82] is **GRANTED in part and DENIED in part** as follows:

    a.    The motion is **DENIED** to the extent it relies on the statute of limitations to bar recovery and claims that Wang failed to present sufficient evidence of his hours worked.  A genuine dispute of material fact remains as to whether Lin acted willfully, and the number of hours Wang worked;

    b.    The motion is **DENIED** as to Defendant China Buffet because an employer-employee relationship existed between China Buffet and Wang;

    c.    The motion is **GRANTED** as to Defendants Lin, Zheng, and Mei as they were not Wang's joint employers and therefore cannot be held personally liable for Wang's FLSA and/or MFLSA claims.

DATED: July 2, 2020
at Minneapolis, Minnesota.

_____
JOHN R. TUNHEIM
Chief Judge
United States District Court